UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

```
----------------------------X  Docket#
UNITED STATES OF AMERICA,    : 17-cr-664-JBW-RER
                             :
     - versus -              : U.S. Courthouse
                             : Brooklyn, New York
                             :
RICHARD LUTHMANN,            : January 17, 2019
          Defendant          :
----------------------------X
```

TRANSCRIPT OF CRIMINAL CAUSE FOR CURCIO HEARING
BEFORE THE HONORABLE RAMON E. REYES, JR.
UNITED STATES MAGISTRATE JUDGE

**A   P   P   E   A   R   A   N   C   E   S:**

**For the Government**:          **Richard P. Donoghue, Esq.**
                                 United States Attorney

                            BY:  **James P. McDonald, Esq.**
                                 **Moira Kim Penza, Esq.**
                                 Assistant U.S. Attorney
                                 271 Cadman Plaza East
                                 Brooklyn, New York 11201

**For the Defendant**:           **Arthur L. Aidala, Esq.**
                                 Law Offices of Aidala
                                 & Bertuna, P.C.
                                 8118 13th Avenue
                                 Brooklyn, NY 11228

                                 **Mario D. Romano, Esq.**
                                 8212 Third Avenue
                                 Brooklyn, NY 11209
**Conflict Counsel**
**For the Defendant**:           **John M. Burke, Esq.**
                                 26 Court Street
                                 Brooklyn, NY 11242


**Transcription Service**:       **Transcriptions Plus II, Inc.**
                                 61 Beatrice Avenue
                                 West Islip, New York 11795
                                 laferrara44@gmail.com

Proceedings recorded by electronic sound-recording,
transcript produced by transcription service

2

Proceedings

1          THE CLERK:  Criminal Cause for Curcio Hearing
2     before the Honorable Ramon E. Reyes, Jr., docket number
3     17-cr-664, United States of America v. Luthmann.
4          Counsel for the government, please state your
5     name for the record.
6          MR. MCDONALD:  Good afternoon, your Honor.
7          James McDonald and Moira Penza on behalf of the
8     United States.
9          MS. PENZA:  Good afternoon, your Honor.
10         THE COURT:  Good afternoon.
11         MR. AIDALA:  Good afternoon, your Honor.
12         Arthur Aidala for Mr. Luthmann.
13         THE COURT:  Good afternoon.
14         MR. ROMANO:  Good afternoon, your Honor.
15         Mario Romano for Mr. Luthmann.
16         THE COURT:  Good afternoon.
17         MR. BURKE:  And good afternoon, Judge.
18         For Mr. Luthmann, John Burke.  I was appointed
19    to be Curcio counsel for Mr. Luthmann.
20         THE COURT:  Good afternoon.
21         I first want to indicate for the record that
22    prior to this hearing, I asked the government to supply
23    me with the psychiatric evaluation that was done for Mr.
24    Luthmann at Judge Weinstein's request in order to
25    determine whether Mr. Luthmann is competent to deal with

3

Proceedings

1    the Curcio issue because if he is not, then it would be

2    waste of time.

3         And I have reviewed the evaluation.  Obviously,

4    I am not a psychiatrist, although I have dealt with

5    issues of competence in the past as a judge.  It's my

6    conclusion based on the report itself that Mr. Luthmann

7    is competent for the purpose of this hearing and this

8    hearing alone.

9         I am certainly not making any determination for

10   Judge Weinstein.  Ultimately, it's his call as to whether

11   Mr. Luthmann is competent to stand trial.

12        Is there anyone who has anything to say about

13   that or disagrees with my determination?

14        MR. MCDONALD:  No, your Honor.

15        MR. AIDALA:  No, Judge.

16        THE COURT:  Okay.  Mr. Burke, you were

17   appointed Curcio counsel for Mr. Luthmann.  Have you had

18   the opportunity to discuss with him --

19        MR. BURKE:  Yes, Judge.  I have met with Mr.

20   Luthmann on several occasions.

21        THE COURT:  When were you first appointed?

22        MR. BURKE:  June.

23        THE COURT:  Okay.

24        MR. BURKE:  June of 2018.  I think shortly

25   before Mr. Luthmann was set to undergo examinations.  I

4

Proceedings

1  spoke to him in June and I spoke to him recently.

2          THE COURT:  Prior to speaking with him, you had

3  the government's letter --

4          MR. BURKE:  Yes.

5          THE COURT:  -- seeking this hearing?

6          MR. BURKE:  Yes.

7          THE COURT:  All right.  Did you have any

8  difficulty communicating with Mr. Luthmann and explaining

9  to him, discussing with him what the government's

10  concerns were?

11          MR. BURKE:  No difficulty.  He was cogent and

12  articulate.

13          THE COURT:  Do you believe he understands what

14  the government contends or is raising --

15          MR. BURKE:  Yes.

16          THE COURT:  -- as to the facts of the potential

17  conflicts?

18          MR. BURKE:  Yes, Judge, I -- Mr. Luthmann

19  understands the government's concerns about the possible

20  conflicts in this case.

21          THE COURT:  All right.  And did he express to

22  you any conclusion as to whether he wants to continue

23  with Mr. Aidala and Mr. Romano's representation, just

24  that he expressed to you?

25          MR. BURKE:  I'm sorry?

5

Proceedings

1           THE COURT:  I don't want to know what his

2   expression was but did he express to you what he wants to

3   do?

4           MR. BURKE:  Oh, yes, he did, Judge.

5           THE COURT:  Okay.

6           MR. BURKE:  Should I tell you?

7           THE COURT:  Not yet.

8           MR. BURKE:  Okay.

9           THE COURT:  It's ultimately what he -- I need

10  to hear it from him what he says, although it is my

11  recommendation to make to Judge Weinstein as to whether

12  to accept that determination.

13          Mr. McDonald, why don't you explain to me

14  succinctly what the potential conflicts are here, as the

15  government sees them?

16          MR. MCDONALD:  Your Honor, the government, and

17  I will speak at a high level of generality because some

18  of the matters have been filed under seal, the government

19  sees the potential conflict along the liens of the -- Mr.

20  Romano's, in particular, potential involvement as a

21  witness in the case.  It concerns two specific events or

22  two discrete events; one, a telephone call that was

23  placed by Mr. Romano to an attorney.  And two, a letter

24  that followed from Mr. Luthmann to a potential witness in

25  the case and the proximity of those two events.  And Mr.

6

Proceedings

1   Romano's involvement in that would be an area that he

2   could potentially be called as a witness in a criminal

3   case or a future criminal case.

4           The second deals with, and this was something

5   we discussed and was the basis for the bail revocation

6   for Mr. Luthmann in June, there was, in this instance,

7   the sharing of interceptions by the government with

8   parties.  Those interceptions had been provided to

9   defense counsel as part of discovery in this case.  And

10  the fact that third parties had obtained them would be in

11  violation of a protective order that Judge Weinstein

12  entered in the case.

13          Under the protective order, those interceptions

14  should only have been viewed by Mr. Luthmann in the

15  presence of his counsel and so they may be witnesses as

16  to how those interceptions would be witnesses as to how

17  those interceptions would have been taken from wherever

18  they were taken and given to third parties.  So those

19  were the two areas where they could be witnesses in the

20  matter, your Honor.

21          THE COURT:  And there are other concerns that

22  the government has that it cannot express in open court

23  because they had been sealed, or at least the

24  applications have been sealed and --

25          MR. MCDONALD:  The specifics, in particular, of

7

Proceedings

1    the first concern that I addressed, I would prefer not to

2    discuss in open court but in terms of the categories that

3    we view as requiring disqualification, I don't think

4    there's any additional categories beyond those two that I

5    have described with respect to the reason for the Curcio

6    hearing, your Honor.

7            THE COURT:  Okay.  And it is the government's

8    contention that these potential conflicts are not

9    waivable or are waivable?

10            MR. MCDONALD:  It is the government's position

11    that they are waivable, your Honor, at this time.

12            THE COURT:  Okay.  All right.

13            Mr. Luthmann, you have discussed this matter

14    with Mr. Burke, is that correct?

15            THE DEFENDANT:  Yes, your Honor.

16            THE COURT:  All right.  About how much time did

17    you spend talking with him about this matter?

18            THE DEFENDANT:  Initially, in June or so, we

19    spent about an hour-and-a-half maybe at the MDC and then

20    again a few weeks ago, we spent about the same amount of

21    time, I believe a little over an hour, at the MDC

22    discussing this.

23            THE COURT:  Do you have an understanding based

24    on your discussions with Mr. Burke as to the factual

25    contentions that the government has made concerning the

8

Proceedings

1   potential conflicts you may have with your counselor?

2           THE DEFENDANT:  I do, your Honor.

3           THE COURT:  All right.  I am not going to go

4   into them in detail beyond what I have already said and

5   what Mr. McDonald has said because of the nature of them

6   and the fact that some of them have been discussed in the

7   sealed pleadings in this case, but you're sure that you

8   understand factually what the government is contending?

9           THE DEFENDANT:  I do, your Honor.

10          THE COURT:  All right.  What is your

11  understanding of the risks that are presented to you as a

12  defendant in this case, based on the factual allegations

13  of the government?

14          THE DEFENDANT:  The government may seek to call

15  Mr. Romano or Mr. Aidala as a witness against me in a

16  future proceeding.

17          THE COURT:  And as a result, what?

18          THE DEFENDANT:  That would mean their

19  disqualification as trial counsel.

20          THE COURT:  Beyond them being called as

21  witnesses, are you aware of any other risks that are

22  presented based on what the government has contended?

23          THE DEFENDANT:  That I have a right to

24  conflict-free counsel but I also discussed with Mr.

25  Burke, my right to counsel of my choice and the counsel

9

                              Proceedings

1   of my choice is Mr. Aidala and Mr. Romano.

2   (Counsel and client confer)

3              THE DEFENDANT:  Oh, yeah, and that the worry

4   that there's a potential that I would be forced into or

5   coaxed into a plea agreement or cooperation with the

6   government for -- on behalf of Mr. Aidala and Mr. Romano

7   to coax good will or curry favor with the government and

8   that's not an issue.

9              THE COURT:  Okay.  Curry favor with the

10  government in what way?  What do you think?

11             THE DEFENDANT:  To not have to expend resources

12  to bring a superseding indictment or an additional

13  prosecution and to resolve the case in a way favorable

14  for the government.

15             THE COURT:  What is your understanding to the

16  effect of any waiver that you may have at this point?  So

17  let's say you waive any conflict that may exist between

18  you and Mr. Romano and you and Mr. Aidala, what results

19  from that?

20             THE DEFENDANT:  That Mr. Romano and Mr. Aidala

21  will be able to continue as my counsel and I won't have a

22  chance to raise their -- the only issues that the

23  government raised that subsequently is hindering my case,

24  as constitutional violations or as in an appeal or

25  anything like that.  I would waive those rights.

10

Proceedings

1    THE COURT:  So you take the risk that should
2    you waive and go forward with their representation and
3    they do act on the conflict and attempt to curry favor
4    with the government to your detriment.  You're giving up
5    any claim that that's a problem, that's a constitutional
6    violation or otherwise.  Do you understand that?
7         THE DEFENDANT:  I do understand that, yes.
8         THE COURT:  And you, in fact, wish to continue
9    with Mr. Aidala and Mr. Romano representing you?
10        THE DEFENDANT:  I do.  Mr. Romano and Mr.
11   Aidala are my counsel of choice.
12        THE COURT:  Okay.  I have to say for the record
13   because I know Judge Weinstein will read this, my initial
14   determination that Mr. Luthmann is competent for the
15   purpose of this hearing based on my read of the
16   psychiatric report, is confirmed by the colloquy that
17   I've just had with Mr. Luthmann.  He appears to me to be
18   oriented.  His affect is normal.  He is making good eye
19   contact.  He seems to -- he's perfectly able to respond
20   to questions, even questions that call for somewhat of a
21   narrative.  His responses are cogent and so, he in my
22   mind, is certainly competent for -- to determine whether
23   to waive any conflicts that may exist between him and Mr.
24   Aidala and Mr. Romano.
25        Mr. Burke, do you have anything that you want

Transcriptions Plus II, Inc.

11

Proceedings

1  to raise at this point, any questions you think I should

2  be asking Mr. Luthmann?

3          MR. BURKE:  No, your Honor.  Mr. Luthmann has

4  always maintained his position, that he wanted to keep

5  his present counsel and waive any conflict that we

6  discussed.

7          THE COURT:  Mr. McDonald and Ms. Penza, is

8  there anything that I am failing to do here?

9          MR. MCDONALD:  No, your Honor.  We do not.

10          THE COURT:  Judge Weinstein asked me to decide

11  this issue or to make a report and recommendation or it's

12  unclear.

13          MR. MCDONALD:  I would -- I think when we had

14  initially addressed the matter, it was on the basis of a

15  report and recommendation.  It may be sufficient based on

16  the transcript and the Court's conclusions now.  I don't

17  think anything further was decided.

18          I know one of the issues was simply the

19  availability.  So I do think Judge Weinstein had hoped

20  that this conference would allow a speedier resolution of

21  it.  So based on that, I believe that a report and

22  recommendation would most facilitate that.

23          THE COURT:  Okay.  I am not going to write it

24  up though.  It's going to be on the record.

25          MR. MCDONALD:  That seems appropriate.

Proceedings

1      THE COURT:  One thing I didn't ask you, Mr.

2   Luthmann, I should because it's part of the standard that

3   the Second Circuit has established for this issue, it's

4   sort of alluded to by you telling me how much time you've

5   spent discussing it with Mr. Burke, but was that enough

6   time, in your mind, to consider these issues and make a

7   determination, whether it's time specifically that you

8   spent with Mr. Burke or subsequently you spent on your

9   own thinking about it?  Have you had enough time?

10      THE DEFENDANT:  I spent time with Mr. Burke and

11   I spent time researching the issue on my own and thinking

12   about it and it was a substantial amount of time and it

13   was a sufficient time for me.

14      THE COURT:  Okay.  Based on the information

15   that I have, I find that as I said previously, Mr.

16   Luthmann is competent to waive any potential conflicts

17   that may exist between himself and his attorneys, Mr.

18   Aidala and Mr. Romano, that he understands the

19   consequences of going forward while having waived those

20   potential conflicts.  He has had enough time to consider

21   this issue.  That he understands the potential conflicts

22   and that he freely chooses to waive them and go forward

23   with Mr. Aidala's and Romano's representation.

24          So it's my recommendation to Judge Weinstein,

25   that he accept the waiver and proceed with the case.

13

                              Proceedings

1            Technically, I think you have 14 days to object

2    to a report and recommendation, although I don't think

3    that's necessary, but you have that opportunity.

4            Is there anything else?

5            MR. MCDONALD:  Your Honor, we would ask that

6    the court set a control status conference date in front

7    of your Honor for 30 days.  I don't think that we will

8    necessarily come back to your Honor but we haven't been

9    able to schedule a next conference date with Judge

10   Weinstein --

11           THE COURT:  With Judge Weinstein.

12           MR. MCDONALD:  -- and I would seek the

13   exclusion of time on the basis of potential plea

14   negotiations.  At the time this issue first arose, there

15   were plea discussions going on between the government and

16   defense counsel.  I think it's our expectation based on

17   the Court's report and recommendation that we be able to

18   re-engage and short of reinitiate where the case stood as

19   of June and so, we would seek the exclusion of time until

20   the next conference.

21           And if it comes off the calendar because Judge

22   Weinstein schedules a conference, we'll notify the Court.

23           THE COURT:  Okay.  Any objection, Mr. Aidala

24   and Mr. Romano?

25           MR. AIDALA:  No, your Honor.

14

                          Proceedings

1           THE COURT:  Okay.

2           MR. BURKE:  Well, Judge, I take it I would be

3  excused --

4           THE COURT:  Well --

5           MR. BURKE:  -- from that next conference,

6  unless something -- I'm done unless something turns up.

7           THE COURT:  Yes, Mr. Burke.  You'll be excused

8  from the next conference unless -- you're going to stay

9  as Curcio counsel until this is done.

10          MR. BURKE:  Right.

11          THE COURT:  So unless another conflict is -- a

12 potential conflict is raised between now and then, you

13 don't have to come.

14          All right, so February 16th -- it's a weekend.

15 We will put this down for a status conference at -- on,

16 rather, February 13th.  It's not quite 30 days but that's

17 what works for my calendar, at 11 a.m.

18          MR. MCDONALD:  That's fine, your Honor.

19          THE COURT:  And --

20          MR. AIDALA:  Your Honor?

21          THE COURT:  Mr. Aidala?

22          MR. AIDALA:  Yeah, hopefully we will have the

23 issues resolved and we won't be here but I am scheduled

24 to do a hearing and I was ordered to be there, at least

25 in the morning of the 13th.

15

                         Proceedings

1           THE COURT:  All right.  How about 2:30?

2           MR. AIDALA:  Thank you, your Honor.

3           THE COURT:  All right.  2:30, Wednesday,

4   February 13th.  You've been, I assume, since this case

5   has been pending for some time, Mr. Luthmann, that you

6   were previously advised of your right to a speedy trial.

7           THE DEFENDANT:  Yes, your Honor.

8           THE COURT:  Commencing within 70 days of the

9   indictment.

10          THE DEFENDANT:  Yes, your Honor.

11          THE COURT:  All right.  And we have excluded

12  time previously, yes?

13          THE DEFENDANT:  Yes, we have.

14          THE COURT:  All right.  We're going to continue

15  to exclude time through February 13th in light of

16  potential plea negotiations with the government.  Do you

17  have any objection to that?

18          THE DEFENDANT:  No objections.

19          THE COURT:  Do you understand that if I exclude

20  this time now, you can't argue it later on, it should be

21  included in the 70-day calculation?

22          THE DEFENDANT:  Yes, your Honor.

23          THE COURT:  All right.  There's no threats or

24  pressure been put on you or anything to get you to agree

25  to this exclusion?

16

Proceedings

1          THE DEFENDANT:  No, your Honor.

2          THE COURT:  Okay.  We'll exclude that time.

3          MR. MCDONALD:  Thank you, your Honor.  Nothing

4    else from the government.

5          MR. AIDALA:  Your Honor, one other topic having

6    nothing to do with this right here --

7          THE CLERK:  Please use the microphone.

8          MR. AIDALA:  And I apologize if -- let me cut

9    to the chase.  Mr. Luthmann, in June, was placed in

10   custody.  Previously he was out on bail.  I am asking for

11   his bail to be exonerated and given back to his mom, who

12   is the person who put up the bail.  It's all property,

13   not -- we're not seeking for his release.  He's not going

14   anywhere.  So since the magistrate set the bail, I am

15   assuming that --

16         THE COURT:  The magistrate judge.

17         MR. AIDALA:  I apologize.

18         THE COURT:  That's okay.  The title was changed

19   in 1990.

20         MR. AIDALA:  I apologize, your Honor.  I was in

21   college drinking -- no, sorry, I was in law school

22   actually.   The magistrate judge set the bail, so I was

23   hoping that this Court could put on the record that the

24   bail is going to be exonerated.

25         MR. MCDONALD:  We've discussed this Mr. Aidala

17

Proceedings

1    and have no objection, your Honor.

2            THE COURT:  So ordered.  We'll exonerate the

3    bond.  All right.  Thank you.

4            MR. AIDALA:  Thank you very much, your Honor.

5    Appreciate it.

6                    (Matter concluded)

7                        -o0o-

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

18

# C E R T I F I C A T E

I, LINDA FERRARA, hereby certify that the foregoing transcript of the said proceedings is a true and accurate transcript from the electronic sound-recording of the proceedings reduced to typewriting in the above-entitled matter.

I FURTHER CERTIFY that I am not a relative or employee or attorney or counsel of any of the parties, nor a relative or employee of such attorney or counsel, or financially interested directly or indirectly in this action.

IN WITNESS WHEREOF, I hereunto set my hand this **22nd** day of **January**, 2019.

*Linda Ferrara*

Linda Ferrara

AAERT CET 656

Transcriptions Plus II, Inc.