UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

```
------------------------------X  Docket#
UNITED STATES OF AMERICA,      : 17-cr-664-JBW-RER
                               :
     - versus -                : U.S. Courthouse
                               : Brooklyn, New York
                               :
RICHARD LUTHMANN,              : March 18, 2019
                               :
               Defendant.  :  4:13 PM
------------------------------X
```

TRANSCRIPT OF CRIMINAL CAUSE FOR A GUILTY PLEA
BEFORE THE HONORABLE RAMON E. REYES, JR.
UNITED STATES MAGISTRATE JUDGE

**A    P    P    E    A    R    A    N    C    E    S:**


**For the Government**:          **Richard P. Donoghue, Esq.**
                                 United States Attorney

                          BY:    **Moira Kim Penza, Esq.**
                                 Assistant U.S. Attorney
                                 271 Cadman Plaza East
                                 Brooklyn, NY 11201


**For the Defendant**:           Law Offices of Aidala &
                                 Bertuna, PC
                                 8118 13th Avenue
                                 Brooklyn, NY 11228
                          BY:    **Arthur L. Aidala, Esq.**

                                 **Mario D. Romano, Esq.**
                                 8212 Third Avenue
                                 Brooklyn, NY 11209




**Transcription Service**:       **Transcriptions Plus II, Inc.**
                                 61 Beatrice Avenue
                                 West Islip, NY 11795
                                 laferrara44@gmail.com


Proceedings recorded by electronic sound-recording,
transcript produced by transcription service

2

Proceedings

1          THE CLERK:  Criminal cause for entry of plea

2     before the Honorable Ramon E. Reyes, Jr.; USA v Richard

3     Luthmann, 17-cr-664-1.

4          Counsel for plaintiff, please state your name

5     for the record.

6          MS. PENZA:  Lawyer Kim Penza, for the United

7     States.  Good afternoon, your Honor.

8          THE COURT:  Good afternoon.

9          THE CLERK:  Counsel for defendant, please state

10    your name for the record.

11         MR. AIDALA:  Arthur Aidala.  Good afternoon,

12    your Honor.

13         THE COURT:  Good afternoon.

14         MR. ROMANO:  Mario Romano, for Mr. Luthmann.

15    Good afternoon.

16         THE COURT:  Good afternoon.

17         Mr. Luthmann, I am advised by your attorney

18    that you wish to plead guilty to counts one and nine of

19    the indictment that's been filed against you; is that

20    correct?

21         THE DEFENDANT:  Yes, your Honor.

22         THE COURT:  This is a serious decision that

23    you'll have to make, and I will have to make sure that

24    you understand all of your rights and also the

25    consequences of your guilty plea.  To do that, I will

3

Proceedings

1   have to ask you some questions, and your answers to my

2   questions must be made under oath.  So if you'd stand up

3   and raise your right hand, I will swear you in.

4   R I C H A R D   L U T H M A N N,

5        called as a witness, having been first duly sworn,

6        was examined and testified as follows:

7             THE COURT:  Mr. Luthmann, you understand that

8   having been sworn, your answers to my questions will be

9   subject to the penalties of perjury or making a false

10  statement, if you do not answer truthfully?

11            THE DEFENDANT:  Yes, your Honor.

12            THE COURT:  That means that if you answer

13  falsely to any of my questions, the government may

14  prosecute you for perjury or making a false statement and

15  may use any of your false statements made today during

16  that prosecution.

17            Do you understand?

18            THE DEFENDANT:  Yes, your Honor.

19            THE COURT:  As I know you're aware, this is

20  Judge Weinstein's case.  He's the judge who will sentence

21  you and make the ultimate decision as to whether to

22  accept your guilty plea.

23            If you wish, you have the absolute right to

24  plead guilty in front of him, and there will be no

25  prejudice to you.  Alternatively, if you wish, I will

4

Proceedings

1  listen to your plea this afternoon, and then a transcript

2  of this proceeding will be made by the court reporter,

3  and Judge Weinstein will review the transcript in

4  connection with your sentence.

5          Do you understand?

6          THE DEFENDANT:  Yes, your Honor.

7          THE COURT:  Do you wish to give up your right

8  to plead guilty directly in front of Judge Weinstein and

9  instead proceed this afternoon in front of me?

10          THE DEFENDANT:  Yes, your Honor.

11          THE COURT:  Are you making this decision

12  voluntarily and of your own free will?

13          THE DEFENDANT:  Yes, your Honor.

14          THE COURT:  Has anyone threatened you or have

15  any promises been made to you to induce you to plead

16  guilty in front of me, as opposed to pleading guilty in

17  front of Judge Weinstein?

18          THE DEFENDANT:  No, your Honor.

19          THE COURT:  In connection with that, I have

20  been given the consent form that permits me to listen to

21  your plea.  It has a number of signatures on it, one of

22  which is next to my finger  here.

23          Is that your signature?

24          THE DEFENDANT:  I believe so, yes.

25          THE COURT:  Okay.  I probably couldn't see it

5

                    Proceedings

1    from that distance either.

2              As I said, Mr. Luthmann, before listening to

3    your plea there are a number of questions that I have to

4    ask you to make sure that your plea is valid.  If you

5    don't understand any of my questions or if you don't

6    understand anything else that I'm explaining to you this

7    afternoon, please let me know, okay.

8              THE DEFENDANT:  Yes, your Honor.

9              THE COURT:  What is your full name?

10             THE DEFENDANT:  Richard Albert Luthmann.

11             THE COURT:  How old are you?

12             THE DEFENDANT:  Thirty-nine years old.

13             THE COURT:  What schooling or education have

14   you had?

15             THE DEFENDANT:  I'm a graduate of Columbia

16   University, New York Law School, and the University of

17   Miami.

18             THE COURT:  Are you under the care of a doctor

19   or psychiatrist for any reason?

20             THE DEFENDANT:  Yes, it would be the MDC

21   Medical at this point.

22             THE COURT:  What are you being treated for?

23             THE DEFENDANT:  Bipolar disorder.

24             THE COURT:  Are you taking medication for that?

25             THE DEFENDANT:  Yes, I am.

6

Proceedings

1          THE COURT:  What medication do you take?

2          THE DEFENDANT:  I don't have the full list in

3   front of me, but I take doses of medication daily that

4   they give me.

5          THE COURT:  Other than the bipolar disorder,

6   have you been diagnosed with any psychiatric or mental

7   health illness?

8          THE DEFENDANT:  High anxiety.

9          THE COURT:  Do you take medication for that as

10  well?

11         THE DEFENDANT:  Yes, I do.

12         THE COURT:  All right.  These medications that

13  you're taking for these conditions, do they interfere

14  with your ability to comprehend what's going on and to

15  understand what it is we're doing this afternoon?

16         THE DEFENDANT:  No, they do not.

17         THE COURT:  Have you ever been hospitalized or

18  treated for drug addiction, alcoholism, or mental or

19  emotional problems?

20         THE DEFENDANT:  Yes.

21         THE COURT:  Tell me about that.

22         THE DEFENDANT:  In or about April of last year,

23  I went to the Richmond University Medical Center

24  Emergency Room, Psychiatric Emergency Room, and I was

25  thereafter admitted.  That's where they diagnosed me with

7

Proceedings

1  bipolar disorder.

2          THE COURT:  Other than that, have there been

3  any hospitalizations for any mental health issues,

4  alcoholism, drug abuse?

5          THE DEFENDANT:  Well, I was sent to FMC Devens

6  for a psychiatric study and evaluation by

7  Judge Weinstein.

8          THE COURT:  I've read the report that was done,

9  that study.

10         Other than the medication that you told me

11  about already, in the past 24 hours have you taken any

12  medicines, pills, or drunk an alcoholic beverages, or

13  taken any narcotics?

14         THE DEFENDANT:  No, your Honor.

15         THE COURT:  Is your mind clear right now?

16         THE DEFENDANT:  Yes.  Yes, it is.

17         THE COURT:  You understand what's going on?

18         THE DEFENDANT:  Yes, I do.

19         THE COURT:  Mr. Luthmann, as a defendant in a

20  criminal case, you have the right to be represented by an

21  attorney at every stage of the proceedings.  You have

22  chosen to retain Mr. Aidala to represent you in this

23  case.  If at any point in time you need to talk to him

24  about what we're discussing, let me know.  I'll let you

25  go back inside and have a private place to speak with

8

Proceedings

1   him.  Okay?

2            THE DEFENDANT:  Yes, thank you.

3            THE COURT:  All right.  And going forward, if

4   at some point in time -- you're going to be sentenced by

5   Judge Weinstein eventually, but if you go forward from

6   today and you could no longer afford to retain counsel,

7   you can ask the court to appoint an attorney to represent

8   you.

9            Do you understand that?

10           THE DEFENDANT:  Yes, I do.

11           THE COURT:  Have you had any problem conferring

12  with your attorneys concerning your case?

13           THE DEFENDANT:  No, I have not.

14           THE COURT:  Have you had enough time to talk

15  with them about entering a guilty plea?

16           THE DEFENDANT:  Yes, I have.

17           THE COURT:  Are you fully satisfied with the

18  representation and advice they have provided to you?

19           THE DEFENDANT:  Yes, I am.

20           THE COURT:  Mr. Aidala, you have discussed

21  these matters with Mr. Luthmann?

22           MR. AIDALA:  Yes, your Honor.

23           THE COURT:  Are you satisfied that he

24  understands the rights that he's giving up by pleading

25  guilty?

9

Proceedings

1          MR. AIDALA:  Yes, your Honor.

2          THE COURT:  Are you satisfied that he is

3    capable of understanding the nature of these proceedings?

4          MR. AIDALA:  Absolutely, your Honor.

5          THE COURT:  Do you have any doubt at all about

6    his competence to plead guilty at this time?

7          MR. AIDALA:  Not anymore, your Honor.

8          THE COURT:  Did you review the plea agreement

9    with him?

10          MR. AIDALA:  Yes, several times, Judge.

11          THE COURT:  Okay.  Did you discuss with him the

12    sentencing guidelines and how those guidelines affect his

13    case?

14          MR. AIDALA:  Yes, your Honor.

15          THE COURT:  Thank you.

16          Mr. Luthmann, the government has returned a

17    multi-count indictment against you.  I understand that

18    you will be pleading guilty to counts one and nine of

19    that indictment.

20          Count one charges you with wire fraud in or

21    about and between August 2015 and February 2016, both

22    dates being approximate and inclusive, within the Eastern

23    District of New York and elsewhere, the defendants

24    Richard Luthmann and George Padula III, together with

25    others, did knowingly and intentionally conspire to

10

Proceedings

1   execute a scheme, an artifice, to defraud one or more

2   businesses, including Doe Company 1, Doe Company 2, Doe

3   Company 3, Doe Company 4, and Doe Company 5, and to

4   obtain money and property from them by means of

5   materially false and fraudulent pretenses,

6   representations and promises, and for the purpose of

7   executing such scheme and artifice to transmit and

8   cause to be transmitted by means of wire communication

9   in interstate and foreign commerce, writings, signs,

10  signals, pictures, and sounds, contrary to Title

11  18 USC § 1343.  That's the conspiracy to commit wire

12  fraud count.

13          Count nine charges you with extortionate

14  collection of credit conspiracy.  In pertinent part, it

15  reads:  In or about and between January 2016 and December

16  2016, both dates being approximate and inclusive, within

17  the Eastern District of New York and elsewhere, the

18  defendants Richard Luthmann, George Padula III, and

19  Michael Beck, together with others, did knowingly and

20  intentionally conspire to participate in the use of

21  extortionate means to collect and attempt to collect one

22  or more extensions of credit from co-conspirator one, and

23  to punish such person for the non-repayment thereof.

24          You've received a copy of the indictment, yes?

25          THE DEFENDANT:  Yes, your Honor.

11

Proceedings

1          THE COURT:  In order to secure a conviction

2   against you for both counts one and nine, the government

3   would have to convince a jury beyond a reasonable doubt

4   of the following:

5          First, that there was, in fact, an agreement or

6   understanding between two or more people to commit the

7   object or purpose of the conspiracy, and here there were

8   two, conspiracy to commit wire fraud and extortionate

9   collection of credit; and

10          second, that you knowingly and intentionally

11   became a member of the conspiracy.

12          The elements of the crime of wire fraud are as

13   follows:

14          First, that there was a scheme or artifice to

15   defraud or to obtain money or property by materially

16   false and fraudulent pretenses representations or

17   promises;

18          second, that you knowingly and wilfully

19   participated in the scheme or artifice to defraud with

20   knowledge of its fraudulent nature and with specific

21   intent to defraud; and

22          third, that in the execution of that scheme you

23   used or caused to be used interstate wires.

24          The elements of extortionate collection of

25   credit are:

12

Proceedings

1          First, that you collected or attempted to
2    collect an extension of credit;

3          second, that you used extortionate means to
4    collect or attempt to collect the extension of credit;
5    and

6          third, that you participated knowingly in the
7    use of the extortionate means.

8          The government would have to prove each of
9    those elements beyond a reasonable doubt in order to
10   secure a conviction against you.

11         Do you understand that?

12         THE DEFENDANT:  Yes, your Honor.

13         THE COURT:  What I want to do now is go over
14   the rights that you have and the rights that you will be
15   giving up, if you plead guilty.

16         First of all, you have the right to plead not
17   guilty.  Do you understand that?

18         THE DEFENDANT:  Yes, your Honor.

19         THE COURT:  What that means is that even if you
20   are guilty, you have a choice in this matter, and it's up
21   to you, and you alone, to decide what to do.  You may
22   withdraw your previously entered plea of not guilty and
23   plead guilty, as you apparently wish to do, or you may
24   choose to go to trial simply by persisting in your not
25   guilty plea.  Do you understand?

13

Proceedings

1          THE DEFENDANT:  Yes, your Honor.

2          THE COURT:  If you did plead not guilty, you

3    would have the right under the constitution and laws of

4    the United States to a speedy trial by a jury in public.

5    At trial you would have the right to be represented by an

6    attorney.

7          Do you understand?

8          THE DEFENDANT:  Yes, your Honor.

9          THE COURT:  At trial you would be presumed to

10   be innocent.  That means that you wouldn't have to prove

11   that you're innocent.  Under our legal system, it's the

12   government that has the burden to prove beyond a

13   reasonable doubt that you're guilty of the crimes

14   charged.  And if you had a trial and the government would

15   fail to meet that burden of proof, the jury would have to

16   find you not guilty.

17          Do you understand?

18          THE DEFENDANT:  Yes, your Honor.

19          THE COURT:  That's why juries sometimes return

20   verdicts of not guilty, even though the jurors believe

21   the defendant probably committed the crime charged.  When

22   a jury returns a not guilty verdict, they're not saying

23   they believe the defendant is innocent.  They're merely

24   saying they're not convinced beyond a reasonable doubt

25   that he is guilty.

14

Proceedings

1          Do you understand?

2          THE DEFENDANT:  Yes, your Honor.

3          THE COURT:  During trial witnesses for the

4   government would have to come into court and testify

5   under oath in your presence.  Your attorney would have

6   the right to cross examine each witness, to object to the

7   evidence offered by the government, and he could offer

8   evidence on your behalf.  He could also subpoena

9   witnesses to come into court to testify on your case.

10          Do you understand that?

11          THE DEFENDANT:  Yes, your Honor.

12          THE COURT:  At trial you would have the right

13   to testify on your behalf, if you wanted to.  On the

14   other hand, you couldn't be forced to testify, if you

15   didn't want to.  Under the constitution and laws of the

16   United States, no one can be forced to testify against

17   himself.  And if you had a trial and did not testify,

18   Judge Weinstein would instruct the jury that they could

19   not hold that against you.

20          Do you understand?

21          THE DEFENDANT:  Yes, your Honor.

22          THE COURT:  If instead of going to trial you

23   plead guilty to the crimes charged, and if Judge

24   Weinstein accepts your plea, you will be giving up your

25   constitutional right to a trial and all the other rights

15

Proceedings

1   I've just discussed.  There will be no trial in this

2   case.  The court will simply enter a judgment of guilty

3   based upon your plea.

4            Do you understand?

5            THE DEFENDANT:  Yes, your Honor.

6            THE COURT:  If you do plead guilty, I'll have

7   to ask you questions about what you did, in order to

8   satisfy myself and Judge Weinstein that you are guilty of

9   the crimes charged.  You're going to have to answer my

10  questions and acknowledge your guilt, and when you do

11  that you give up your right not to testify against

12  yourself.

13           Do you understand?

14           THE DEFENDANT:  Your Honor,

15           THE COURT:  Also, if you enter a guilty plea

16  today and you admit the criminal conduct alleged in the

17  indictment, and if Judge Weinstein accepts your guilty

18  plea, you will not be able to appeal to a higher court on

19  whether you committed this crime.  That will be over by

20  your guilty plea.

21           Do you understand?

22           THE DEFENDANT:  Yes, your Honor.

23           THE COURT:  Are you willing to give up your

24  right to a trial and the other rights I've just

25  discussed?

16

Proceedings

1          THE DEFENDANT:  Yes, your Honor.

2          THE COURT:  I know that you've entered into a

3   plea agreement with the government, and I've been given

4   the original.  It's been marked as Government Exhibit 1,

5   and I'll give it back to the AUSA after this proceeding.

6   I have a number of questions I would like to ask you

7   about it.

8          First of all, on the last page there are a

9   number of signatures, again, one of which is next to my

10  finger.

11         Is that your signature?

12         THE DEFENDANT:  Yes, your Honor.

13         THE COURT:  Mr. Luthmann, did you read this

14  plea agreement carefully before you signed it?

15         THE DEFENDANT:  Yes, your Honor.

16         THE COURT:  And you discussed it with your

17  attorneys?

18         THE DEFENDANT:  Yes, I did.

19         THE COURT:  Do you believe you understand

20  what's contained in this plea agreement?

21         THE DEFENDANT:  Yes, I do.

22         THE COURT:  Ms. Penza, does this plea agreement

23  contain the entirety of any understanding the US

24  Attorney's Office has with Mr. Luthmann concerning the

25  charges?

17

Proceedings

1          MS. PENZA:  It does, your Honor.

2          THE COURT:  Is that your understand as well,

3   Mr. Aidala?

4          MR. AIDALA:  Yes, Judge.

5          THE COURT:  Mr. Luthmann, is there anything in

6   the plea agreement that is not clear to you that you need

7   me to explain further?

8          THE DEFENDANT:  No, your Honor.

9          THE COURT:  Other than the promises contained

10   in the plea agreement, has anyone made any other promises

11   that are causing you to plead guilty?

12          THE DEFENDANT:  No, your Honor.

13          THE COURT:  I would like to go over a few

14   things in the plea agreement with you now starting with

15   the penalties for the crimes to which may plead guilty.

16          The wire fraud conspiracy charge carries a

17   maximum term of imprisonment of twenty years, a minimum

18   term of imprisonment of zero years, a minimum term of

19   supervised release of three years to follow any term of

20   imprisonment.  And if you violate a condition of your

21   release, you could be sentenced to up to two years in

22   prison without credit for any time you previously spent

23   in prison or previously spent on supervised release.

24   There is a maximum fine of $250,000; mandatory

25   restitution in the full amount of each victims' losses,

18

Proceedings

1  as determined by the court; $100 special assessment; and

2  criminal forfeiture as set forth in the plea agreement

3  paragraphs 6 through 13.

4          The extortionate extension of credit conspiracy

5  charge carries a maximum term of imprisonment of twenty

6  years, a minimum term of imprisonment of zero years; a

7  maximum term of supervised release of three years to

8  follow any term of imprisonment.  Again, if a term is

9  violated you could be sentenced to up to two years

10  without credit for time you spent in prison previously or

11  time you previously spent on supervised release.  There

12  is also a maximum fine of $250,000; mandatory restitution

13  in the full amount of each victims' losses as determined

14  by the court; a $100 special assessment.

15          Do you understand that, Mr. Luthmann?

16          THE DEFENDANT:  Yes, your Honor.

17          THE COURT:  Now, in order to determine

18  your sentence, the actual sentence to give you,

19  Judge Weinstein will have to conduct a sentencing

20  analysis.  The first step is for him to consider

21  the sentencing guidelines that are issued by the

22  United States Sentencing Commission.  Those guidelines

23  are advisory.  They're not mandatory, but they're an

24  important consideration in the sentencing, and district

25  judges look to them as a factor in determining what a

19

Proceedings

1   reasonable sentence is in a criminal case and what

2   sentence to give you.

3          Mr. Aidala told me that he discussed the

4   sentencing guidelines with you and how they affect your

5   case; did he do that?

6          THE DEFENDANT:  Yes.  Yes, your Honor.

7          THE COURT:  The second step is for

8   Judge Weinstein to determine whether there are any

9   factors present that would allow him to depart from the

10  sentencing guidelines, either upwardly or downwardly, and

11  he also has to the consider the factors set forth in

12  18 USC § 3553(a) against all of the facts and

13  circumstances of your case, and it may be that is what is

14  a called a "non-guidelines sentence" may be appropriate.

15         The bottom line is that until your sentencing

16  date, you won't know with any certainty what the

17  guidelines will be, whether there will be grounds to

18  depart from them or whether Judge Weinstein will impose a

19  non-guidelines sentence.

20         Do you understand?

21         THE DEFENDANT:  Yes, your Honor.

22         THE COURT: Judge Weinstein has not set a

23  sentencing date, has he?

24         MS. PENZA:  Actually, he may have.  Let me see.

25         THE COURT:  You're probably not going to get

20

Proceedings

1    cell service in here.

2            MS. PENZA:  You're probably right, your Honor.

3            THE COURT:  Okay.

4            MS. PENZA:  I don't have my notes with me from

5    the last status conference before Judge Weinstein.  I

6    thought perhaps he did.

7            THE COURT:  Give me one minute, please.

8            MS. PENZA:  I'm correcting myself.  I actually

9    now remember that he did not because we discussed that I

10   might be on trial and figuring out when that might be.

11           THE COURT:  Okay.  So Judge Weinstein at some

12   point will set a sentencing date, Mr. Luthmann.  Prior

13   to that sentencing hearing, he will receive a pre-

14   sentence report from the probation department, which will

15   have facts in it about you and the crime to which you

16   pled guilty, and it will also have a recommendation on

17   what the sentencing guidelines call for in your case.

18   Your attorneys will have the opportunity to review the

19   pre-sentence report in consultation with you and to

20   challenge anything contained in it.  They can also argue

21   to Judge Weinstein what the sentencing guidelines should

22   be for your case.

23           Although there's uncertainty, as we sit here

24   today, about what the guidelines ultimately will be, it's

25   important for you to know what the possible guidelines

21

Proceedings

1    calculations are.

2           And I know that if you reviewed the plea

3    agreement, you see at least what the government estimates

4    at this point in time and what the guidelines provide,

5    but I need to inform you of that in any event.

6           The base offense level for the wire fraud

7    conspiracy according to the plea agreement is seven.

8    There is a 14-point enhancement for the loss amount, a

9    two-point enhancement for use of sophisticated means, and

10   a two-point enhancement for the abuse of trust leading to

11   an adjusted offense level of 25.

12          MS. PENZA:  There is a typographical error that

13   I did --

14          THE COURT:  Yes, that's what I was looking at.

15   After that count one guideline calculation, there was

16   another guideline calculation for the count nine, but it

17   says, "count seven."  So I'm going to change "seven" to

18   "nine," and when we're done everyone initial it.

19          MS. PENZA:  Thank you, your Honor.

20          THE COURT:  Okay.  So for the extortionate

21   collection of credit conspiracy, the base offense level

22   is 20, a four-point enhancement for the use of a

23   dangerous weapon, resulting in an adjusted offense level

24   of 24.

25          Since there are multiple counts that you will

22

Proceedings

1   be pleading guilty to, there is a multi-count analysis

2   that's done.  Once that is done, the highest offense

3   level is a 25.  There is a two-point enhancement for an

4   increase in offense level and a two-point enhancement for

5   obstruction of justice, resulting in a total offense

6   level of 29.

7           Given your guilty plea today and your

8   acceptance of responsibility through your allocution and

9   all the way through your sentence, you would be entitled

10  to an additional three points of a reduction, resulting

11  in a 26 total offense level.  If you are in criminal

12  history category one, that results in a range of

13  imprisonment of 63 to 78 months.

14          Do you understand that?

15          THE DEFENDANT:  Yes, your Honor.

16          THE COURT:  Okay.  Actually, you have

17  stipulated to this guideline calculation in the plea

18  agreement, including all the adjustments that were

19  discussed.

20          If Judge Weinstein sentences you to a term of

21  imprisonment of 87 months or less, you have agreed not to

22  challenge your conviction or your sentence by way of an

23  appeal or a petition pursuant to 28 USC § 2255 or

24  otherwise.

25          Do you understand?

23

Proceedings

1    THE DEFENDANT: Yes, your Honor.

2    THE COURT: Okay.  I'd be remiss if I didn't

3    mention that you have agreed to the criminal forfeiture

4    in paragraphs 6 through 13, the total amount of that is a

5    $130,000, if I'm not mistaken, paid at an amount of five

6    percent of your net annual income until fully paid.

7        Do you understand?

8    THE DEFENDANT:  Yes, your Honor.

9    THE COURT:  Two things I have to mention.

10   We've gone through the guideline calculation in the plea

11   agreement and you have stipulated to that.  That is not

12   binding on Judge Weinstein.  He has to make his own

13   determination as to what the guidelines provide in this

14   case, and he has the authority under the law to sentence

15   you to a term of imprisonment that is more severe or less

16   severe than the guidelines.  Ultimately, it is up to him.

17       Do you understand that?

18   THE DEFENDANT:  Yes, your Honor.

19   THE COURT:  Lastly, whatever sentence you do

20   receive from Judge Weinstein will be very close to the

21   actual amount of time you spend in prison because you

22   won't be able to write to a parole board or parole

23   commission to let you out early because in our federal

24   system, there is no such thing.

25       Do you understand that?

Proceedings

1          THE DEFENDANT:  Yes, your Honor.

2          THE COURT:  Mr. Luthmann, do you have any

3   questions at this point that you want to ask me about

4   anything related to your case that might not be clear to

5   you?

6          THE DEFENDANT:  No, your Honor.

7          THE COURT:  Are you ready to plead?

8          THE DEFENDANT:  Yes, I am.

9          THE COURT:  Mr. Aidala, do you know of any

10  reason why Mr. Luthmann should not enter a guilty plea?

11         MR. AIDALA:  No, sir.

12         THE COURT:  Are you aware of any legal defense

13  to the charges?

14         MR. AIDALA:  I do not, your Honor.

15         THE COURT:  Ms. Penza, before I hear

16  Mr. Luthmann's plea and allocution, is there anything

17  that I either did not inform him that I am supposed to or

18  that you would like me to instruct him on?

19         MS. PENZA:  No, thank you, your Honor.

20         THE COURT:  Okay.  Mr. Luthmann, how do you

21  plead to count one of the indictment, guilty or not

22  guilty?

23         THE DEFENDANT:  Guilty.

24         THE COURT:  How do you plead to count nine of

25  the indictment, guilty or not guilty?

Proceedings

25

1          THE DEFENDANT:  Guilty.

2          THE COURT:  Mr. Luthmann, are you making these

3   guilty pleas voluntarily and of your own free will?

4          THE DEFENDANT:  Yes, I am.

5          THE COURT:  Has anyone threatened, forced, or

6   pressured you to plead guilty?

7          THE DEFENDANT:  No, they have not.

8          THE COURT:  Other than the promises in the plea

9   agreement, has anyone made any other promises that are

10  causing you to plead guilty?

11         THE DEFENDANT:  No.

12         THE COURT:  Has anyone promised you what

13  sentence you will receive from Judge Weinstein, if you

14  plead guilty?

15         THE DEFENDANT:  No, your Honor.

16         THE COURT:  Why don't you tell me in your own

17  words why you're guilty of these crimes.

18         THE DEFENDANT:  In or about and between August

19  2015 and February 2016, both dates being approximate and

20  inclusive within the Eastern District of New York and

21  elsewhere, I, together with others, did knowingly and

22  intentionally conspire to execute a scheme and artifice

23  to defraud one or more businesses, including five Doe

24  companies to obtain money and property from them by means

25  of materially false and fraudulent pretenses,

26

Proceedings

1    representations and promises for the purpose of executing

2    such scheme and artifice to transmit and cause to be

3    transmitted by means of wire communication and interstate

4    and foreign commerce writings, signs, signals, pictures,

5    and sounds contrary to Title 18 USC § 1343.

6           And then in or about January 2016 and

7    December 2016, both dates being approximate and inclusive

8    within the Eastern District of New York and elsewhere,

9    I, together with others, did knowingly and intentionally

10   conspire to participate in the use of extortionate

11   means to collect and attempt to collect one or more

12   extensions of credit from co-conspirator one and to

13   punish such person for the non-payment thereof, Title 18

14   USC § 894(c).

15          THE COURT:  Ms. Penza?

16          MS. PENZA:  Your Honor, he is stipulating that

17   he has committed all of the elements of the statute in

18   terms of a factual basis for the plea.  I think the

19   defendant should concede what the actual facts are, so

20   that the court may be satisfied that there is a factual

21   basis for the plea.

22          THE COURT:  I agree.  Other than reading the

23   statute back to me, Mr. Luthmann, can you tell me in

24   plain English why you're guilty, what you did?

25          THE DEFENDANT:  Okay.  I was representing a

27

Proceedings

1   company that was ripping off Chinese people and Chinese

2   companies in the scrap metal business.  That's the first

3   count.

4           And the second count, one of the individuals

5   that was in that company had a dispute with the other

6   individuals and there was a situation and an encounter.

7   I wasn't at the actual encounter, but it was an encounter

8   where a firearm was brandished and the individual was

9   threatened.

10          THE COURT:  The individual, I guess that's

11  co-conspirator number one.

12          THE DEFENDANT:  Yes.

13          THE COURT:  He was part of the scrap metal

14  fraud?

15          THE DEFENDANT:  Yes.

16          THE COURT:  The threatening of him was in

17  relation to what?

18          THE DEFENDANT:  It was a business debt.  I

19  believe it was a business debt that was owed between

20  conspirator one and one of the other co-defendants.

21          THE COURT:  You had knowledge of this before it

22  happened?

23          THE DEFENDANT:  Yes.

24          THE COURT:  And you participated in it?

25          THE DEFENDANT:  I wasn't physically --

Proceedings

1          THE COURT:  You participated in the --

2          THE DEFENDANT:  I participated in the

3    conspiracy to collect the credit.

4          THE COURT:  So you agreed to be part of that

5    conspiracy?

6          THE DEFENDANT:  I agreed to be part of the

7    meeting between the individuals.  At that meeting, which

8    I never actually arrived at, a gun was brandished, what

9    appeared to be a gun was brandished.  I wasn't there, so

10   I don't know.

11         THE COURT:  Ms. Penza, do you think that's

12   enough?

13         MS. PENZA:  Your Honor, I would ask that as

14   to the wire fraud conspiracy that the defendant stipulate

15   that as part of the conspiracy, he and/or other

16   co-conspirators used emails that traveled interstate to

17   facilitate the fraud.

18         THE DEFENDANT:  I will stipulate that emails

19   were sent in furtherance of count one, the wire fraud

20   conspiracy, that traveled interstate.

21         THE COURT:  Between companies?

22         THE DEFENDANT:  Between companies, yes.

23         THE COURT:  I'm more concerned with the second,

24   count nine.

25         MS. PENZA:  I believe that the defendant --

29

Proceedings

1  perhaps I can try and clarify and make sure that we are

2  comfortable, but I would ask that the defendant stipulate

3  that on or about the date that's alleged he was part of a

4  conspiracy where he agreed to collect a business debt or

5  agreed to help the other co-conspirators collect the

6  business debt from co-conspirator one, and knowing that,

7  that was going to -- that there was going to be force and

8  ultimately a firearm was used as part of that.

9          THE COURT:  So you weren't at this meeting,

10 Mr. Luthmann?

11         THE DEFENDANT:  No, I was not.

12         THE COURT:  Okay, but you knew the meeting was

13 going to take place?

14         THE DEFENDANT:  Yes, I did.

15         THE COURT:  And you were a knowing member of

16 the conspiracy to collect the debt?

17         THE DEFENDANT:  Yes.

18         THE COURT:  And you knew that when this meeting

19 would take place, the other conspirators would use

20 extortionate means to collect the debt from co-

21 conspirator number one?

22         THE DEFENDANT:  Yes.

23         MS. PENZA:  Your Honor, perhaps -- I'm sorry.

24         THE COURT:  Go ahead.

25         MS. PENZA:  So, your Honor, I believe that the

30

Proceedings

1  defendant would stipulate that the extortion occurred at

2  Mr. Luthmann's law office, and that he knew that, that

3  was going to occur.

4           THE COURT:  Was the meeting at your law office?

5           THE DEFENDANT:  It was a meeting at my law

6  office, yes.

7           THE COURT:  You see, I just have to make sure

8  we lay out the facts that Judge Weinstein can look at and

9  say, yes, each of the elements is satisfied.  Otherwise,

10 he cannot accept your plea.

11          Okay.  With the supplementation and the

12 colloquy, you believe it's a factually sufficient plea?

13          MS. PENZA:  Yes, I do, your Honor.

14          THE COURT:  Mr. Aidala, do you agree?

15          MR. AIDALA:  Yes, your Honor.

16          THE COURT:  I do as well.  There's a factual

17 basis for the plea.  I also find that Mr. Luthmann is

18 acting knowingly and voluntarily, that he understands the

19 charges.  He understands his rights, and he appreciates

20 the consequences of his guilty plea.

21          It is, therefore, my recommendation to

22 Judge Weinstein that he accept Mr. Luthmann's guilty

23 pleas to counts one and nine.

24          Is there anything else?

25          MR. AIDALA:  No, your Honor.

31

Proceedings

1          MS. PENZA:  Not from the government,

2    your Honor.  Thank you.

3          THE COURT:  Thank you.

4                    (Matter concluded.)

5                         -o0o-

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

# C E R T I F I C A T E

I, ROSALIE LOMBARDI, hereby certify that the foregoing transcript of the said proceedings is a true and accurate transcript from the electronic sound-recording of the proceedings reduced to typewriting in the above-entitled matter.

I FURTHER CERTIFY that I am not a relative or employee or attorney or counsel of any of the parties, nor a relative or employee of such attorney or counsel, or financially interested directly or indirectly in this action.

IN WITNESS WHEREOF, I hereunto set my hand this **31st** day of **March**, 2019.



Rosalie Lombardi
Transcription Plus II